UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

R.C. TWAY COMPANY and KENTUCKY HIGH
TECH PERFORMANCE TRAILERS, LLC                                    PLAINTIFFS

v.                                                       CIVIL ACTION NO. 3:12-CV-122

HIGH TECH PERFORMANCE TRAILERS, LLC and
BRUCE C. HANUSOSKY                                                DEFENDANTS

**MEMORANDUM OPINION**

This action was filed in this court on March 7, 2012 by plaintiffs R.C. Tway Company d/b/a Kentucky Trailer Manufacturing ("Tway") and Kentucky High Tech Performance Trailers, LLC ("Kentucky High Tech") against defendants High Tech Performance Trailers, LLC ("High Tech") and Bruce C. Hanusosky ("Hanusosky"). On August 29, 2012, the plaintiffs moved for partial summary judgment (DN 22). The defendants responded to that motion, but also moved to stay the motion for partial summary judgment (DN 34). However, prior to deciding those motions, this court undertook a *sua sponte* review of its subject matter jurisdiction in the case. Concerned that complete diversity may not be present, the court issued an order for the plaintiffs to show cause as to why the case should not be dismissed for lack of subject matter jurisdiction (DN 40). The plaintiffs have since filed a response to the order to show cause, in which they argue in favor of this court's jurisdiction (DN 42). The defendants filed papers arguing that the court should dismiss the matter for lack of subject matter jurisdiction (DN 43). After reviewing the parties' submissions, the court finds that it does not have subject matter jurisdiction over the matter and the action must be dismissed.

The plaintiffs' complaint alleges that this court has subject matter jurisdiction over the action pursuant to its diversity jurisdiction. Pursuant to 28 U.S.C. § 1332, federal district courts have jurisdiction over actions between citizens of different states where the amount in controversy is more than $75,000. Complete diversity is required: the citizenship of each plaintiff must be diverse from the citizenship of each defendant. *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996). While a corporation is a citizen of its states of incorporation and principal place of business, a limited liability company takes the citizenship of each of its partners or members. *Delay v. Rosenthal Collins Group, LLC*, 585 F.3d 1003, 1005 (6th Cir. 2009).

Here, there is no dispute that the two defendants, High Tech and Hanusosky, are both Ohio residents. In its order to show cause, the court expressed some confusion as to the citizenship of High Tech, since the caption listed High Tech's name as "High Tech Performance Trailers, LLC," while the allegations stated that High Tech was "an Ohio corporation with a principal place of business in Painesville, Ohio." Thus, the court was unsure whether to assess High Tech's citizenship using the test for that of a limited liability company or that of a corporation. The parties have since sufficiently clarified that, at the time the complaint was filed, High Tech was a limited liability company whose sole member was Hanusosky, a citizen of Ohio. Thus, High Tech is a citizen of Ohio. *Delay*, 585 F.3d at 1005; *Grupo Dataflux v. Atlas Global Group, L.P.*, 541 U.S. 567, 570-571 (2004) (noting that it is "hornbook law" that diversity of citizenship is measured "against the state of facts that existed at the time of filing" of the action).

There is also no dispute between the parties as to the citizenship of both plaintiffs, Tway and Kentucky High Tech. Tway, at the time the action was filed, was a Kentucky corporation with a principal place of business in Kentucky; thus, Tway is a Kentucky citizen for purposes of assessing

subject matter jurisdiction. Kentucky High Tech is a limited liability company. The sole members of Kentucky High Tech are Tway, a Kentucky citizen, and High Tech, an Ohio citizen. Thus, Kentucky High Tech is a citizen of both Kentucky and Ohio. *Delay*, 585 F.3d at 1005.

As the court noted in its order to show cause, Kentucky High Tech's Ohio citizenship would appear to pose a problem, as it means that a plaintiff has the same citizenship as both defendants and diversity is therefore not complete. In the plaintiffs' response to the order to show cause, they acknowledge this issue, but urge the court to disregard Kentucky High Tech's citizenship on the basis that Kentucky High Tech is a nominal party. For their part, the defendants take the position that the court should consider Kentucky High Tech's citizenship in assessing whether complete diversity exists, and that the action should therefore be dismissed for lack of subject matter jurisdiction.

In determining diversity jurisdiction, "a federal court must disregard nominal or formal parties and rest jurisdiction only upon the citizenship of real parties to the controversy." *Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 461 (1980). The Sixth Circuit has explained the difference between real parties in interest and formal or nominal parties as follows:

> "[T]he real party in interest is the person who is entitled to enforce the right asserted under the governing substantive law." *Certain Interested Underwriters at Lloyd's of London v. Layne*, 26 F.3d 39, 42-43 (6th Cir. 1994). In contrast to a 'real party in interest,' a formal or nominal party "is one who has no interest in the result of the suit and need not have been made a party thereto." *Grant County Deposit Bank v. McCampbell*, 194 F.2d 469, 472 (6th Cir. 1952) (citation omitted).

*Maiden v. N. Am. Stainless, L.P.*, 125 F. App'x 1, 3 (6th Cir. 2004).

With those standards in mind, the court turns to the allegations and claims in the complaint in order to determine whether Kentucky High Tech is a real party in interest or is merely a nominal or formal party. The complaint states that Tway and High Tech created Kentucky High Tech as a

joint venture to manufacture custom trailers. The manufacturing of trailers by Kentucky High Tech was to be done at Tway's Louisville, Kentucky plant. According to the plaintiffs, the joint venture operating agreement appointed Tway as the manager of Kentucky High Tech, in which capacity Tway had the authority to take all actions and make all decisions regarding the day to day business of Kentucky High Tech.[1] The complaint asserts that, as part of Tway's managerial position, it had sole authority to accept deposits made to Kentucky High Tech, and to the extent that Hanusosky or High Tech came into possession of Kentucky High Tech's funds, they were required to turn them over to Tway so that Tway could take action on behalf of Kentucky High Tech. However, the plaintiffs alleged, "High Tech and/or Hanusosky accepted deposits for and/or payments for customers' purchases" that they did not turn over to Tway. Those allegedly wrongfully withheld funds totaled at least $330,000. The plaintiffs also alleged that High Tech and/or Hanusosky appropriated certain trade names and trademarks that belonged to Tway, failed to reimburse Tway for wages and benefits Tway paid to Kentucky High Tech employees that High Tech was required to pay under the operating agreement, and operated a business that competed with Kentucky High Tech in violation of a non-compete provision of the operating agreement.

According to the complaint, in January 2012, Tway notified High Tech that it desired to dissolve the joint venture. Thereafter, Articles of Dissolution for Kentucky High Tech were filed. Additionally, on January 12, 2012, Hanusosky and High Tech issued a press release that made a supposedly false and defamatory statement that the Louisville plant at which Kentucky High Tech manufactured trailers had "not been able to duplicate the same standard of quality that [High Tech] maintained in the Painesville facility for so many years" prior to the joint venture.

---

[1] The complaint states that the operating agreement defined certain "Major Decisions" that Tway did not have the authority to make unilaterally.

Pursuant to those allegations, the plaintiffs asserted 16 claims against the defendants.[2] While many of the claims were specific to alleged harms done by the defendants directly to Tway, there are a handful that concern alleged harms done to Kentucky High Tech by the defendants. In particular, in Count I, the plaintiffs bring a claim for breach of contract for High Tech's alleged failure to perform obligations it owed to Kentucky High Tech under the operating agreement. And in Count III, the plaintiffs bring a breach of fiduciary duty claim against High Tech for its supposed breach of a fiduciary duty it allegedly owed to Kentucky High Tech as one of its members. Additionally, Counts V and VII are claims against High Tech and Hanusosky, respectively, for theft by failure to make a required disposition of property pursuant to KRS §§ 514.070 and 446.070; those claims are based on allegations that High Tech and Hanusosky did not remit payments it owed to Kentucky High Tech, instead keeping the payments for themselves. Finally, Counts IX and XI are claims for defamation against High Tech and Hanusosky, respectively, for supposedly defaming Kentucky High Tech through the statement that the trailers produced by the joint venture were not of the same quality as those produced by High Tech prior to the joint venture.

Each of the claims identified above clearly alleges that High Tech or Hanusosky violated some duty it owed directly to Kentucky High Tech, thus causing Kentucky High Tech injury. As

---

[2] In the order listed in the complaint, the claims are as follows: I) breach of contract to Kentucky High Tech; II) breach of contract to Tway; III) breach of fiduciary duty to Kentucky High Tech; IV) breach of fiduciary duty to Tway; V) theft by failure to make required disposition in favor of Kentucky High Tech; VI) theft by failure to make required disposition in favor of Tway; VII) theft by failure to make required disposition of property by Hanusosky in favor of Kentucky High Tech; VIII) theft by failure to make required disposition of property by Hanusosky in favor of Tway; IX) defamation against Kentucky High Tech by High Tech; X) defamation against Tway by High Tech; XI) defamation against Kentucky High Tech by Hanusosky; XII) accounting of all financial activities by High Tech and orderly distribution of assets of Kentucky High Tech upon its dissolution; XIII) injunctive relief enjoining High Tech from violating the non-compete provisions of the operating agreement; XIV) injunctive relief enjoining Hanusosky from violating the non-compete provisions of the operating agreement; XV) misappropriation of trade name by High Tech; and XVI) misappropriation of trade name by Hanusosky.

Kentucky High Tech is the allegedly injured party for each of those claims, it is the one that is entitled to enforce the rights granted by substantive law. Accordingly, Kentucky High Tech is not a nominal party, but instead is a real party in interest as to those claims.

Nevertheless, the plaintiffs argue that Kentucky High Tech should be considered a nominal party because it "has no real interest in the outcome of this case" due to the fact that "the pleadings of all other parties contemplate the division of the Joint Venture's assets, its dissolution, and the allocation of any funds to the other parties." In that regard, the plaintiffs have provided the court with a copy of the Articles of Dissolution of Kentucky High Tech that were filed with the Kentucky Secretary of State on January 12, 2012. The plaintiffs point out that in their complaint's prayer for relief, they request an orderly distribution of the assets of Kentucky High Tech, as do the defendants in their answer and counterclaim against Tway.

However, the court disagrees that the filing of Articles of Dissolution and the request for a distribution of assets renders Kentucky High Tech a nominal or formal party to this action. First, Kentucky law makes clear that even after the filing of Articles of Dissolution, a limited liability company remains an existing entity. KRS § 275.300(2). Indeed, after dissolution, a limited liability company is empowered to take actions necessary for winding up its affairs, including, *inter alia*, collecting assets and suing or being sued. KRS § 275.300(2)(a) and (4)(a). As a limited liability company retains the power under state law to enforce its rights in court until the company has finished winding up, there is no basis for disregarding its entity status and holding it to be merely a nominal party to an action simply because it has been dissolved.

Nor does the fact that the parties request that this court effect an orderly distribution of Kentucky High Tech's assets change the analysis. Questions regarding diversity of citizenship are

assessed based upon "the state of facts that existed at the time of filing – whether the challenge be brought shortly after filing, after the trial, or even for the first time on appeal." *Grupo Dataflux*, 541 U.S. at 571. In other words, that the parties contemplate that at the end of this action, Kentucky High Tech will no longer be an existing entity is meaningless to the diversity analysis. The question is whether, at the outset of the action, Kentucky High Tech was entitled to enforce the rights it was asserting against High Tech and Hanusosky. The answer to that question is plainly yes.

The plaintiffs cite to *Polak v. Kobayashi*, 2005 WL 2008306 (D.Del. Aug. 22, 2005) ("*Polak I*") as support for the proposition that Kentucky High Tech's citizenship should be disregarded. In that action, the plaintiff, Werner Polak, sued Pokobo LLC, a limited liability company of which Polak was a member, and John Kobayashi, the other member of Pokobo. Initially, in *Polak I*, the district court found that Pokobo was a nominal party and that its citizenship could be disregarded for the purpose of assessing subject matter jurisdiction. *Polak I*, 2005 WL 2008306 at *3. In doing so, the court stated that "the primary issue in th[e] lawsuit" was whether Pokobo should be dissolved pursuant to Delaware law. *Id.* at *2-*3. However, the district court reassessed its jurisdiction later in the proceedings. *Polak v. Kobayashi*, 2008 WL 4905519 (D.Del. Nov. 13, 2008) ("*Polak II*"). In *Polak II*, the court reiterated its earlier finding that Pokobo was a nominal party to the dispute over its dissolution. *Id.* at *7. But, in its later opinion, the court did not stop there; instead, it continued to examine the other four claims, besides the judicial dissolution claim, that were asserted in the action. The court found that Pokobo was a real party in interest as to three of those claims – for breach of fiduciary duty, declaratory judgment, and unjust enrichment – because each of those three claims involved alleged harms done to Pokobo. *Id.* at *8. Accordingly, the court found that diversity jurisdiction was lacking as to those claims. *Id.*

In short, while the plaintiffs rely on *Polak I*, that reliance is completely misplaced due to the court's later reassessment of its jurisdiction in *Polak II*. Further, the decision in *Polak II* supports this court's analysis, in that the court in *Polak II* recognized that a limited liability company could not be considered a merely nominal party as to claims alleging that the limited liability company was directly harmed by actions of one of its members, even where the court was simultaneously being asked to dissolve the limited liability company.

The court finds further support for its holding that Kentucky High Tech is more than just a nominal party to this action in *Tampone v. Richmond*, 2010 WL 3083539 (E.D.Mich. Aug. 5, 2010). In that case, like here, the plaintiffs were a limited liability company, Merchant Assure, and one of its members, Tampone. Another member, Richmond, was one of the defendants. At the time the action was filed, Merchant Assure was no longer conducting business. Although the plaintiffs in *Tampone* argued that Merchant Assure was a nominal party because it was "a 'defunct entity' whose 'only role in th[e] litigation is to serve as a temporary conduit for assets wrongfully taken and utilized by Defendant Richmond to be transferred to Plaintiff Tampone,'" the court rejected that argument. *Tampone*, 2010 WL 3083539, at *4-*5. The court found that Merchant Assure was not simply a nominal party because the complaint "allege[d] that certain assets held by the Richmond Defendants belong[ed] to Merchant Assure" and further "allege[d] wrongful conduct by Defendants directed at Merchant Assure, specifically." *Id.* at *5. Thus, the *Tampone* court found that Merchant Assure was the one entitled to enforce the rights that were being asserted under the law, and therefore was not merely a nominal or formal party. *Id.*

Tway and Kentucky High Tech attempt to distinguish *Tampone* from this case on the basis that in *Tampone*, the limited liability company, although no longer doing business, had not been

- 8 -

dissolved yet. The court notes that the same appears to be true about the limited liability company in *Polak*. However, the court does not believe that the fact that the limited liability companies in those cases had not yet been dissolved makes any difference. As noted above, Kentucky law makes clear that, even after a limited liability company has been dissolved, it remains an entity and is empowered to sue and to collect its assets. Thus, if the defendants were found liable on the claims asserted by Kentucky High Tech, the recovery for those claims would go in the first instance to Kentucky High Tech. Kentucky High Tech's ongoing entity status is enough to convince the court that Kentucky High Tech should not be regarded as just a nominal party. Therefore, the court concludes that Kentucky High Tech's citizenship must be considered in the diversity analysis, that complete diversity is thus lacking, and that the action must be dismissed without prejudice for lack of subject matter jurisdiction.

      A separate order will issue in accordance with this opinion.

March 5, 2013

**Charles R. Simpson III, Senior Judge**
**United States District Court**